UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| KATHERINE STEEN, Individually and for Others Similarly Situated,<br><br>     Plaintiff(s),<br>v.<br><br>NATIONAL EMERGENCY MEDICAL SERVICES, INC.,<br><br>     Defendant(s). | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Katherine Steen (Steen) brings this collective action to recover unpaid wages and other damages from National Emergency Medical Services, Inc. (National).

2. National employs Steen as one of its Hourly Employees (defined below) in Georgia.

3. Steen and the other Hourly Employees regularly work more than 40 hours a workweek.

4. But National does not pay Steen and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

5. Instead, National pays Steen and the other Hourly Employees non-discretionary bonuses and shift differentials that it fails to include in these employees' regular rates of pay for overtime purposes (National's "bonus pay scheme").

6. National's bonus pay scheme violates the Fair Labor Standards Act (FLSA) by failing to compensate Steen and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

## JURISDICTION & VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. This Court has general personal jurisdiction over National because it is a Georgia corporation.

9. Venue is proper because National maintains its principal place of business in Watkinsville, Georgia, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

10. National has employed Steen as an emergency medical technician (EMT) since approximately April 2023.

11. Throughout her employment, National has paid Steen under its bonus pay scheme.

12. Steen's written consent is attached as **Exhibit 1**.

13. Steen brings this collective action on behalf of herself, and other similarly situated National employees paid under its bonus pay scheme.

14. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly National employees who were paid a bonus during the last three years through final resolution of this action (the "Hourly Employees").**

15. National is a Georgia corporation with its principal place of business in Watkinsville, Georgia.

16. National may be served with process through its registered agent: **The Corporation Company, 410 Peachtree Parkway, Suite 4245, Cumming, Georgia 30041**.

## FLSA COVERAGE

17. At all relevant times, National was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

18. At all relevant times, National was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

19. At all relevant times, National was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

20. At all relevant times, National had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

21. At all relevant times, Steen and the other Hourly Employees were National's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

22. At all relevant times, Steen and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

23. National states it "specialize[s] in 911 emergency system design to ensure exceptional response and expert care, as well interfacility medically necessary transportation between hospitals and health care facilities."[1]

24. To meet its business objectives, National employs workers, including Steen and the other Hourly Employees, to transport and care for patients.

25. For example, National has employed Steen as an EMT in and around Clarke County, Georgia since approximately April 2023.

---

[1] https://www.nationalems.com/services/ (last visited March 14, 2025).

- 3 -

26. As an EMT, Steen's primary job duties include ensuring the appropriate medical supplies are on hand, ensuring the ambulance is in safe driving condition, evaluating patients, providing emergency medical care to patients, and transporting patients to hospitals.

27. Throughout her employment, Steen has regularly worked more than 40 hours a workweek.

28. Indeed, Steen typically works approximately 12 to 13 hours a day (and occasionally 24-hour shifts) and 3 to 4 days a week "on the clock" (generally 40 to 60 hours a workweek).

29. National pays Steen approximately $19.21 an hour.

30. Likewise, the other Hourly Employees typically work approximately 40 to 60 hours a workweek "on the clock."

31. And Steen and the other Hourly Employees are required to report their "on the clock" hours worked via National's designated timekeeping system.

32. But National does not pay Steen and the other Hourly Employees at the required premium overtime rate for all hours worked in excess of 40 a workweek.

33. Instead, National pays Steen and the other Hourly Employees under its bonus pay scheme.

34. Specifically, National pays Steen and the other Hourly Employees non-discretionary bonuses, including sign on bonuses, attendance bonuses, shift bonuses, ACO bonuses, SPE bonuses, and peak bonuses, as well as night and weekend shift differentials, that it fails to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

35. For example, during the pay period ending October 18, 2024, Steen worked 28.59 overtime hours and National paid Steen a "Bonus ACO" of $255 and an "SPE Bonus" of $72.50 that it failed to include in her regular rate of pay to calculate her overtime rate of pay:

| Earnings | Rate | Hours/Units | Current Period | Year To Date |
|---|---|---|---|---|
| Regular | 19.21 | 80.00 | 1536.80 | 29345.59 |
| Weighted Overtime | 28.82 | 28.59 | 823.82 | 8627.33 |
| National EMS Shift | 24.21 | 0.00 | 0.00 | 33.17 |
| National EMS Shift - IFT Night | 24.21 | 0.00 | 0.00 | 319.57 |
| National EMS Weekend Shift | 24.21 | 0.00 | 0.00 | 446.68 |
| Vacation | 19.21 | 0.00 | 0.00 | 461.04 |
| Worked Holiday | 0.00 | 0.00 | 0.00 | 358.65 |
| Attendance Bonus | | | 0.00 | 1250.00 |
| Bonus ACO | | | 255.00 | 2360.50 |
| Peak Bonus | | | 0.00 | 250.00 |
| SPE Bonus | | | 72.50 | 207.50 |
| Shift Bonus | | | 0.00 | 425.00 |
| **Gross** | | 108.59 | 2688.12 | 44085.03 |

36. But National only paid Steen time and a half overtime based only on her base pay rate ($19.21 x 1.5 = $28.815).

37. Thus, under its bonus pay scheme, National does not pay Steen and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek, in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

38. Steen brings her claims as a collective action under Section 216(b) of the FLSA on behalf of herself and the other Hourly Employees.

39. Like Steen, the other Hourly Employees are victimized by National's bonus pay scheme.

40. Other Hourly Employees worked with Steen and indicated they were paid in the same or similar manner under National's bonus pay scheme.

41. Based on her experience with National, Steen is aware National's bonus pay scheme was imposed on other Hourly Employees.

42. The Hourly Employees are similarly situated in the most relevant respects.

43. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

44. Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent collective treatment.

45. Rather, National's bonus pay scheme renders Steen and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 a workweek.

46. National's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

47. National's records also show it paid Steen and the other Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

48. The back wages owed to Steen and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

49. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to National's records, and there is no detraction from the common nucleus of liability facts.

50. Therefore, the issue of damages does not preclude collective treatment.

51. Steen's experiences are therefore typical of the experiences of the other Hourly Employees.

52. Steen has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

53. Like each Hourly Employee, Steen has an interest in obtaining the unpaid wages owed under federal law.

54. Steen and her counsel will fairly and adequately protect the interests of the Hourly Employees.

55. Steen retained counsel with significant experience in handling complex collective action litigation.

56. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and National will reap the unjust benefits of violating the FLSA.

57. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

58. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and National.

59. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

60. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

61. Among the common questions of law and fact are:

    a. Whether National paid the Hourly Employees non-discretionary bonuses;

    b. Whether National failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

    c. Whether National failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

      d.      Whether National's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

      e.      Whether National's violations were willful.

62. As part of its regular business practices, National intentionally, willfully, and repeatedly violated the FLSA with respect to Steen and the other Hourly Employees.

63. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

64. The Hourly Employees are known to National, are readily identifiable, and can be located through National's business and personnel records.

### NATIONAL'S VIOLATIONS WERE WILLFUL

65. National knew it employed Steen and the other Hourly Employees.

66. National knew it was subject to the FLSA's overtime provisions.

67. National knew the FLSA required it to pay non-exempt employees, including Steen and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

68. National knew Steen and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via National's timekeeping system.

69. National knew Steen and the other Hourly Employees were non-exempt employees entitled to overtime pay.

70. National knew it paid Steen and the other Hourly Employees non-discretionary bonuses and shift differentials.

71. National knew it was required to include these non-discretionary bonuses and shift differentials in their regular rates of pay.

72. National knew these non-discretionary bonuses and shift differentials were not included in Steen's and the other Hourly Employees' regular rates of pay for overtime purposes.

73. And National knew the FLSA requires it to pay Steen and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

74. National's failure to pay Steen and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

75. National knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived Steen and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

76. Steen brings her FLSA claim as a collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

77. National violated, and is violating, the FLSA by employing non-exempt employees such as Steen and the other Hourly Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

78. National's unlawful conduct harmed Steen and the other Hourly Employees by depriving them of the overtime wages they are owed.

79. Accordingly, National owes Steen and the other Hourly Employees the difference between the wages actually paid and the proper overtime wages actually earned.

80. Because National knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, National owes Steen and the other Hourly Employees these wages for at least the past 3 years.

81. National is also liable to Steen and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

82. Finally, Steen and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

83. Steen demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Steen, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

    b. An Order finding National liable to Steen and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

    c.      A Judgment against National awarding Steen and the other Hourly Employees all their unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

    d.      An Order awarding attorneys' fees, costs, and expenses;

    e.      An Order awarding pre- and post-judgement interest at the highest applicable rates; and

    f.      Such other and further relief as may be necessary and appropriate.

Dated: March 26, 2025

Respectfully submitted,

**MORGAN & MORGAN, PA**

By: */s/ C. Ryan Morgan*
      C. Ryan Morgan, Esq.
      GA Bar No. 711884

20 N. Orange Ave., 15th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Tel: (407) 418-2069
rmorgan@forthepeople.com

Michael A. Josephson
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788

Fax: (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice application forthcoming*

**ATTORNEYS FOR STEEN & THE HOURLY EMPLOYEES**